All rise. This court is now in session. You may be seated. The clerk will call the next case. 3-14-0716 Re-marriage of Jack Sperry, Appellant by Barney Olson and Ann Sperry, Appellant by Kimberly Norton. Mr. Olson, you may proceed. Thank you. Good morning. Good morning. As the clerk just noted, I'm Barney Olson. I represent Jack Sperry in this matter. Mr. Sperry was married to Ann Sperry. This case involves two rather fundamental issues. The first is quite simply stated that Judge Standard erred by refusing to follow the judgment of Judge Stewart, which approved a marital settlement agreement and which merged it into the judgment of dissolution. That should be almost enough to just kind of sit down, but that's not why we all came here today. Didn't the judgment allow for maintenance in lieu of child support to be revisited in 2012? It was after three years, yes, ma'am. Which would have been sometime in July of 2012. They were divorced about that time in 2009. Is that correct? Yes, that is correct. But you're saying that that directive in the judgment does not allow then the judge to consider the elimination of maintenance but to begin child support. I think the factors, I'm going to cover your thoughts here, but I think the factor that is lost right now is that Judge Standard found that the judgment of Judge Stewart by forgetting about the issue of merger violated public policy. Judge Standard doesn't have that authority. His ruling is totally void. He is not an appellate court judge. He does not sit in your positions. He is a trial court judge. Well, he didn't make the child support retroactive to the date of the merriment settlement agreement. I mean, if he said that it was contrary to public policy, he could have made it retroactive back to the date of the settlement. I think he did make a retroactive application of that child support. There's a huge arrearage that the estate on behalf of Ann is trying to collect, and by doing it Which began to accrue three years after the settlement agreement was approved. That is correct. That is correct. But, once again, the provisions in that marital settlement agreement, which were a merger to the judgment, were so substantive, and I think I point that out through my brief in the various charts at the tail end of the first section, that Jack was more than supporting Ann, had there been a traditional award of maintenance, even the reduction, the statutory, or the staged down reductions, than if the court had applied the statutory factors of 28% for the two children. Isn't that what, when you make the, a judge comes in and says, you know, I'm going to award the child support and it's going to be retroactive to the day it was filed, then as you, you know, have your hearings and hammer things out, that's when you say, well, you know, I've carried the insurance, I've paid daycare, I've done these things, and then you seek to have that credited to reduce the retroactive amount that becomes the arrearage. I think all of that, with all due respect to Justice O'Brien, all that was covered in the original marital settlement agreement, what he was going to do. It didn't say, we all know that, it didn't say child support. It didn't have a label on it, but it didn't need to have that. And that's why I think that Judge Standard, he wasn't an appellate court judge. He just, he didn't like what he saw, and years, three years after the fact, he overrules it. That's not his job. He doesn't have that authority. And I believe I covered that pretty clearly in my reply brief. I think that the maintenance in lieu of child support language recognized that some of the, that he's making a maintenance payment in lieu of child support, and doesn't that recognize just some of the things that he's paying that are in addition to what would normally be considered a maintenance payment, and they are in the nature of support of the children, but for tax consequences are going to be treated differently. Aren't those some of the things that, I mean, you're saying that the agreement on the, so they were going to waive child support, but it had that language. It said, no, he's going to pay maintenance in lieu of child support. And the maintenance had a step-down provision, and Jack had the children for about 50% of the time. He continued to support them in that way, plus all of the other obligations, including paying some of Ann's student loans and other creditor obligations that she had. So I think the concept that Judge Standard could go back and say, we're going to implement a retroactive application of child support because this judgment violated public policy, it's just wrong. But if he hadn't used those terms, if he hadn't used that term, because, you know, we can affirm for any reason, are you saying that it would be wrong even if he didn't use that term because he thought it violated public policy? He had no authority, Justice. He had no authority to say that this merger of the marital settlement agreement into the judgment was void against public policy, none. But he didn't act on that proclamation. Pardon me? He didn't void it out. He didn't act on it. After three years, the marital settlement agreement provided that the payment in lieu of child support would end. It was only for three years. It didn't change anything except the maintenance, Justice, right? The maintenance was the only thing that was changed. It stepped down and then by its own terms, which again, he can't find is void against public policy.  Well, I guess the argument that you're making is that when they agreed that there was not going to be any child support payment, that nobody could ever undo that because they had agreed to it. There's a procedure for doing that. There has to be a suggestion under, I believe it's 5501, to modify and there has to be a substantial change in circumstance and all of that is missing from this case. That was not done by the estate's lawyers. There was no child support determination in the beginning. I know. They postponed it so you can't modify something that wasn't set. It was the very first determination that your client owed child support. What you're saying is that because there was no child support per se, that that makes the original, so you're agreeing with Judge Standard that that violated public policy. No, I'm not. Okay, good. Because that's the crucial decision that I think when you make that decision, which I think you have to in what I've set forth in my brief. The agreement was he's not going to pay child support for the first three years because he's making other payments, including paying for insurance for the children, which later he didn't do. They went on the public dole. That isn't an element in this case. But your argument earlier was he's honored all the things he agreed to pay as part of the agreement. No, he didn't. When she started receiving public aid benefits in the form of a link card and insurance for the children, he gladly accepted that and backed out of the payment of insurance. If that's what Ann chose to do, I wasn't around at that time. And if that's what she chose to do. But it weakens your argument substantially. You know that the marital settlement agreement was modified when it benefited him, but you don't want that marital settlement agreement to be altered at all when it works to his detriment. You're talking about supporting your children. I understand that, ma'am. I truly do. Okay. I have children myself. But I think that when he had all of the obligations that that marital settlement agreement put upon him, and it gets merged into the judgment, that's why I'm saying Judge Standard, no trial court judge can overturn or should overturn another. I think you've made that point repeatedly. Thank you. It's pretty obvious that you're unhappy with Judge Standard. I don't think he had the authority to do what he did. Okay. And there's four cases that I cited. Sutton, Standheim, Stutler, who was a local person here in the Galesburg area, and Pluckett all support that the doctrine of merger does control. I think the case that I cited, Rowski, if I'm saying that right, stands for a very simple proposition, that once it was settled, it was settled. And when you read the WR Grace that was also in my brief, I think that that also finds that Judge Standard could not and should not have ruled as he did. But with regards to the filing of the petition to establish child support, which was filed in July, I believe, of 2012, when the marital settlement agreement allowed for the issue of maintenance and loan support to be reconsidered as of three years, that agreement between the pardons then allows for either of them to come in, or in this case, the Illinois Department of Public Aid to come in. And the requirement, because they've agreed to it, of showing a substantial change in circumstances was never met. It's not required when you agree otherwise. If you have a maintenance provision that just expires on its face with no, you know, we're never going to revisit, you know, just put in, then I think you have to have the substantial change in circumstances. But when you have an agreement that either party can bring us in three years, and look at it, that's one of the contractual terms that they bargained for, isn't it? Yes, it is. And the agreement did not waive any of Jack's duty to support these children after three years. It's clear in there that when public aid, for lack of a better phrase, did not allege, and the trial court did not consider anything other than Judge Standard's finding of violation of public policy. Thank you. And I think that is an incorrect ruling under 750 ILCS 5 slash 510A1. I made reference to my analysis on the charts of 23 through 25, which Judge Standard did not in any way consider any of that information in his reasoning. And for that reason, his reasoning was, I feel, fatally flawed. Here's what really happens at the tail end. Retroactive application of this child support doesn't benefit Jack's children. It benefits an insolvent estate, and it benefits the attorneys for that estate, and creditors of those states, rather than the children themselves. By that type of ruling, it decreases Jack's ongoing ability, because the estate is still trying to collect the back retroactive child support. And thereby, the estate's actions deprise Jack's children of his ability to continue to support them, in lieu of the fact that the mother's not. Well, if he had agreed to pay child support beginning three years after the marital settlement agreement's term expired, then the children would have received the money before their mother died. I disagree with your analysis, Justice Wright. I think that Jack's ability is diminished greatly by the estates grabbing to pay creditors, to pay the estate lawyers, etc. If the mother wasn't getting child support... Kids were getting all the other stuff. To support these children, maybe she had some more bills and some more creditors. I guess maybe, yeah. But that's something... There was a great disparity in income here. There was a great disparity in income. That was all considered in the original deal between these two people. Thank you. Thank you. Ms. Norton? Thank you. Good morning. May it please the Court, Counsel. My name is Kimberly Norton and I represent Ann Sperry in these proceedings. I think that what we need to look at, also in addition to whether or not that marital settlement agreement can be modified, is I think we need to look at the timing of this as well. The department files their petition to modify child support in July of 2012, and when Judge Standard then issues his opinion ruling in August of 2013, he only makes it retroactive to the filing date of that petition. He doesn't make it retroactive for that three-year period here. Counsel, at the time, did not argue that during this, we'll say one-year period of time that existed from the retroactive application, that Jack shouldn't have received a credit for, as Justice suggested, for daycare or health insurance or any of those type of provisions. But on September 10th of 2013, the Court enters the Uniform Order of Support, which conforms to Judge Standard's order. Jack Sperry never appeals that order, and it's not until there's the enforcement proceeding later in the spring of 2014 does he suddenly go back and say, oh wait, there shouldn't have been any retroactive application here, or I shouldn't have, again, had to pay anything. It's our position that this Court doesn't have jurisdiction to even hear this appeal in that 30 days has gone by. But that order, I think it was on September 13th, they don't include any amount of the arrearage. They say that the child support's going to be retroactive to that day, but they don't say, and that amount is equal to, da-da-da-da-da, and he's going to pay this much towards that arrearage, do they? They do not do that. And typically those Uniform Orders of Support, because there's interest that's starting to accrue on those orders, the Illinois Department of Health Care and Family Services is putting a start date and then entering it, and it's left up to someone else to calculate it later. The order itself, the very last box of that order, says there is no just reason to delay enforcement or appeal of this order. Counsel would argue that that's not a final order, and that you can then appeal it at any point down the line. I think they have to set what's the total amount. What's the total amount that is owed, and that's where you can get into, hey, they filed this petition in 2012, and I have since that time been paying things that should be credited, that you should have a hearing on. What's that total package? That's not done until, what is it, May of 2014? May of 2014. But in this appeal, is he challenging the amount that the court determines? He never challenged the amount of the appeal. He never challenged the amount of the appeal, never challenged the interest calculation at all. But in this appeal, he's not challenging the amount of child support? No. He's challenging the amount that he should have paid initially, in the argument that he says that he should be receiving some type of a deviation. Do you know if he continued to pay? I know he didn't continue to pay insurance, because that was modified before the three years was up. But did he pay for daycare? Did he pay for the extra medical costs that were not covered by insurance? Did he continue to do that after July 16th of 2012, or did he stop? I do not know. I do not know. So is it possible there were no credits to be allowed to him? There's a possibility, but it was never argued at the trial level, and I have absolutely no idea what credits he may have been entitled to back against that urge figure. It was never put forth to the trial court. My question to you is more about jurisdiction. Until you have a, to say that you have a retroactive award and then not set the amount or a hearing to determine what that amount is, I don't know how you can say that that is fine, because you're going to pay this child support. We're going to award it back to the state. Eighteen months has gone by. Are you going to determine that they're just going to pay for an additional 18 months after the children are emancipated to clear that back child support? Is somebody going to make a claim for credits? How are we going to take care of it? I think to say that I'm making this award is one thing. Then to determine what the amount of that is and how it's going to get repaid is another step that has to occur typically before you can say, no, I should have gotten credit for this or I paid these things or I have receipts that the trial court wouldn't consider or something that would be appealable then. So my question to you is only going towards your argument about jurisdiction, because I don't know how you can appeal an award when you don't know what the dollar amount or what you're being credited for if you're receiving credit. In the uniform support order that was entered by the court, there's provisions contained in that order for collecting the delinquency and collecting the arrearage. The order sets forth a specific dollar amount that would go towards any delinquency in their specific order. On page 204 of the order, it sets forth that if the obligor becomes delinquent in the payment of the support order, after the entry of this order for support, the obligor must pay in addition to the current support obligation the sum of $8320 for child support and then it goes on. So you're considering the retroactive award delinquent? It is delinquent from the day that it gets entered. From the day that that uniform support order is entered, it creates a delinquency when it makes it retroactive back to that July 2012 date. And so the Illinois Department of Children and Family Services is going to already consider it delinquent when it makes it retroactive and start to collect that under the arrearage. And Mr. Sperry did not attempt to ask for any credits back towards any arrearage. The payments that are made on child support become delinquent as soon as their seven days are up past when they become due statutorily. So on September 13, 2003, we have a weekly amount that becomes due in Owing. And so you're saying that under their rules now there is delinquency, not an arrearage, but a delinquency on the arrearage of the $21,000. So that is established immediately that there is no need for any further proceedings. Correct. It wouldn't be until someone sought to establish exactly what that number was and any type of further collection proceedings, that the calculation for the arrearage as well as any statutory interest that it accumulated would be set forth then. And that's what the estate chose to do in May of 2014. I would also suggest to the court that the court had the authority with which to modify the marital settlement agreement, had the opportunity to hear the parties, had the opportunity to take the evidence into consideration, chose not to deviate from the statutory guidelines, and chose to also feel that child support was an appropriate implication in the marital settlement agreement for the benefit of the custodial parent then being Ann Sperry. So we believe that, firstly, this court does not have jurisdiction in that the appropriate order from September of 2013 was not appealed. If this court does believe that the setting of the arrearage is part of that initial proceeding in September of 2013, it's our position that Judge Standard did not err in his modification of the marital settlement agreement and his setting of child support in the amount that was set was within the statutory guidelines. There was no reason to deviate from it and that it was not erred by this court. Thank you. Thank you, Ms. Norton. Mr. Olson for rebuttal. Justice O'Brien, I'll address one of the issues that you raised with Ms. Norton first. The September 13th order was issued using, as you noted, a preprinted form. The form has a checkbox for reducing the amount of arrears to judgment. The trial court did not check that box. By failing to check the box, the trial court didn't reduce the arrears to a judgment in a manner that would have allowed any appeal to be taken. And I knew, Krantz, as I believe how you say, the case that I cited. It wasn't a final order. It wasn't appealable. When it finally does become appealable, it's on the May 20th, 2014 order, and Jack timely files his appeal as it relates to that. Thank you. I also cited in my reply brief the Geddes, G-E-D-I-S case, that any action that goes back to what Justice Wright said, I make my point clearly that we feel that Judge Standard exceeded his jurisdiction, and that action then becomes void. Manning, I cited also, says a void judgment may be attacked at any time in any court, and I guess in certain respects that's what we're trying to do now. I didn't have this in front of me before when I was arguing about, I think it's an improper action, and my reply brief says it's a rare practice in this one circuit court judge to attempt to exercise appellate review over another. And at the time I did my research on this,  that had been asked to hold directly, then an order by one circuit court judge purporting to overrule the final order, which Judge Stewart's was, of another judge is legally void. That has been reached in other states, and I cited a case in California, Freeman v. Wal-Mart stores on page 7 of my reply brief. The jurisdiction of this court is proper here today. I think that other than that, Ms. Norton's argument has been, my reply brief refutes all of what she has said in there with the cases that I cited, and I don't think that I need to say anything more. I think that it's now in your hands, and I think that Mr. Sperry is here today. He's the gentleman in the back seated with his two children, and he and I both look forward to your prompt decisions. I have a question for you. Yes. As you stand there today, let's assume that Mother did not pass away in an unfriendly fashion. All right. Would your position be that $12,480 should have been paid if she were still alive? Justice Wright, in all honesty, I don't know if that number is a correct mathematical number or not. I think I set forth in my reply brief the charts that show the amounts of money that Jack did, in fact, pay even after, as you noted before, that she went on to public aid and he did not continue one of the other obligations. But I don't know if that's a correct number or not. Ms. Norton points out that public aid— In this appeal, are you challenging that amount? Pardon me? No. In this appeal, are you challenging that amount?  I want to understand the nature of your argument. The nature of your argument is that that arrearage should be set aside because Mother, unfortunately, is no longer with us and the funds will be paid to her estate. Is that correct? That is correct, yes, because that's the person's—the executor or administrator of her estate is a brother, if I remember correctly. And the friction between that family and Jack's family is legendary. And by taking that judgment, that action, to get that judgment, and to try and collect it, and to have it paid into the estate, they feather the lawyers of the estate, they feather the creditors of the estate, and they deprive the children of Jack's family. So I don't know if that directly addresses if she was still alive. I don't know how to do that. I think if she was still alive, then perhaps we wouldn't have all these situations. The judge did not order your client to pay any support after her untimely death, once the children began living with him 100 percent of the time. That is correct. So the $12,480 all represents monies that would have been received from him to the mother of his children. If she was still alive, yes. She was alive during the time this $12,480 accrued. That's correct. I want to make sure I understand. That is—you are correct. That helps me. You are correct. Nothing further? Nothing further. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now, we will take a short recess for appeal change. All rise.